## RUFUS COATES v. THE STATE.

No. 4790.   Decided April 24, 1918.

Rehearing denied May 22, 1918.

### 1.—Murder—Confession—Evidence.

Where, upon trial of murder, defendant's written confession was in compliance with the statutes, the same was admissible in evidence.

### 2.—Same—Change of Venue—Practice on Appeal—Bill of Exceptions—Rule Stated.

The order of the trial judge granting or refusing a change of venue will not be revived upon appeal, unless the facts upon which the same was based are presented in a bill of exceptions, properly signed, approved and filed at the term of the court at which said order was made.

### 3.—Same—Charge of Court—Insanity.

Where, upon trial of murder, the court submitted together with his own charge a requested instruction, with reference to the condition of the defendant's mind from the recent use of intoxicants, which covered the law and the facts of the case, there was no reversible error.

### 4.—Same—Charge of Court—Confession.

Where, upon trial of murder, the court in connection with his own charge, gave a requested charge upon the law as applicable to confessions which properly covered the facts, there was no reversible error.

### 5.—Same—Manslaughter—Charge of Court.

Where, upon trial of murder, the court gave a proper charge on manslaughter there was no error in refusing a requested charge thereon. Besides, the issue of manslaughter was not in the case under the facts.

### 6.—Same—Instrument Used—Deadly Weapon—Charge of Court.

Article 1147, Branch's Ann. P. C., should only be submitted to the jury where there is an issue as to the deadly character of the weapon used in committing the homicide and where the intention does not evidently appear, and there was no error in failing to submit the provisions of this statute in the instant case. Following Ford v. State, 64 Texas Crim. Rep., 14, and other cases.

### 7.—Same—Continuance.

Where the application for continuance did not set out the facts expected to be proved, but only general conclusions, there was no error in overruling the same.

### 8.—Same—Special Venire.

Where the motion to quash the special venire served upon defendant was too indefinite to be considered, there was no error in overruling the same.

### 9.—Same—Change of Venue—Bill of Exceptions—Practice on Appeal.

In the absence of a motion for change of venue and in view of the meagerness of the bill of exceptions, this court can not pass upon testimony offered in support of motion for change of venue.

### 10.—Same—Evidence—Bill of Exceptions.

Where the bill of exceptions with reference to rejected testimony as to a fight defendant had, etc., was altogether too indefinite, the same can not be considered on appeal.

**11.—Same—Evidence—Bill of Exceptions.**

Where the object and purpose of offering certain rejected testimony is not shown in the bill of exceptions, the same cannot be considered on appeal.

**12.—Same—Evidence—Bill of Exceptions.**

Where defendant objected to certain testimony because he was under arrest at the time, but the bill of exceptions failed to show the materiality of the testimony and besides the whole matter was withdrawn from the jury, there was no reversible error.

**13.—Same—Evidence—Defendant's Declaration in Jail—Rule Stated—Insanity.**

Proof of statements and acts made and done while the defendant was in confinement or custody, and which is not of a criminative nature in connection with the case on trial, is admissible on the issue of insanity, whether the defendant is warned or not. Following Burt v. State, 38 Texas Crim. Rep., 397.

**14.—Same—Argument of Counsel.**

Where the objectionable part of State counsel's argument was withdrawn by the court and other parts were not of sufficient importance, there was no reversible error.

**15.—Same—Sufficiency of the Evidence—Death Penalty.**

Where, upon trial of murder, and a conviction thereof inflicting the death penalty, the evidence sustained the conviction under a proper charge of the court, there was no reversible error.

**16.—Same—Change of Venue—Bill of Exceptions—Rule Stated.**

The statute is imperative that in order to have a motion for change of venue considered, a bill of exceptions must be reserved and the evidence set out therein, and it is not sufficient to set out such testimony in the statement of facts, and in the absence of any showing that appellant was placed in such condition that he could not obtain such bill, etc., the question can not be considered on appeal.

Appeal from the District Court of Tarrant. Tried below before the Hon. George E. Hosey.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Turner, Cummings & Doyle,* for appellant.—On question of manslaughter: Lane v. State, 29 Texas Crim. App., 310.

On question of confession: Walker v. State, 2 Texas Crim. App., 326; Crowder v. State, 28 id., 51; Kennon v. State, 11 id., 356; Owens v. State, 16 id., 448; Baggett v. State, 144 S. W. Rep., 1136.

On question of deadly weapon: Fitch v. State, 36 S. W. Rep., 584.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of change of venue: Mooney v. State, 76 Texas Crim. Rep., 539, 176 S. W. Rep., 52.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of the murder of Zella Faulk. Appellant made a confession in writing while under arrest which he contends, in a bill of exceptions, should not have

been admitted because not in compliance with the statute. We have examined the confession and can not agree with appellant's contention. We hold, therefore, there was no error in admitting this confession.

The confession states fairly well the facts of the case as proved by the witnesses as to most of the incidents in connection with the homicide and matters leading to it. It appears from the evidence that appellant had been going with the girl, perhaps engaged to her, and they had been having illicit relations. On the night of the homicide for some time they were not together. He was seeking her about the City of Fort Worth, and finally while at a certain house he ascertained her whereabouts and went to the place, and another party was in company with her. From there they went some distance, she being drunk. Without going into details of what occurred, among other things, he says he ascertained from her that she had intercourse with another party for which she received five dollars; that he then determined to kill her. Going with the girl and another party he secured an ax, and in going by a house for some purpose he changed his mind with reference to the ax and left it. He and the girl separated from the other party. He took her into the Trinity bottom, near the river, and while she was sitting upon the ground he got a stick or limb from a tree about three and one-half or four feet long and about three inches in diameter and struck her three blows, two on the head and one across the breast near where the throat and body join. She fell over. He felt her pulse and came to the conclusion she was dead and left. He went to the residence of Clyde Tucker and informed him of what he had done, and also informed Aubrey of the same facts. Aubrey went to bed and Tucker and appellant went back to where the girl was, and upon reaching that point they discovered that she was still breathing. He says at Tucker's suggestion that as he had fatally hurt her and she could not get well he might as well finish the job, and that he used a knife with a blade three and one-half inches long with which he cut her throat from ear to ear, and then fled the country. He was captured in a distant State and brought back. Upon his trial he was awarded the death penalty. It would serve no practical purpose to go farther into the details of this transaction.

Appellant made a motion to change the venue, which was overruled. The bill of exceptions sets out the testimony, or part of it, with the exhibit of newspapers attached. The evidence set out in this bill is signed by the county attorney but not by counsel for appellant nor approved by the court. The testimony, with the exception of the attached newspaper articles, is also set out in question and answer form. In order to have a bill of exceptions with reference to this matter considered it must be in accordance with the statute, which is article 634, Revised C. C. P., 1911. It provides that the order of the judge granting or refusing a change of venue shall not be revised upon appeal unless the facts upon which the same was based are presented in bill of exceptions prepared, signed, approved and filed at the term of the court at which such order was made. This statute has been construed in a great num-

ber of cases which will be found collated in 2 Vernon's Crim. Proc., p. 342. This bill of exceptions clearly is not in conformity to our law.

There were several charges asked by appellant, some of which were given and some refused. Exception was reserved to the court's charge on insanity, especially with reference to the condition of the mind from the recent use of intoxicants. At the request of appellant, however, the court gave this charge: "On the issue of temporary insanity produced by voluntary use of ardent spirits, I charge you that if you find and believe from the evidence that at the time of the homicide the defendant was so drunk that he was unable to understand the nature and quality of the act and to know the same was wrong, then you may consider such temporary insanity in mitigation of the penalty in this case, and it will be your duty to thereby mitigate his penalty if any as you may see fit and proper." This charge, taken in connection with the court's charge on insanity, covered every phase of that issue.

Exception was also reserved to the court's charge in regard to appellant's confession. The court, however, gave a charge upon this at the request of appellant. This charge is as follows: "I instruct you that no act of the defendant or statement made by him, or confession of his is sufficient in law to warrant his conviction, as the law provides that no defendant shall be convicted upon his confession alone, but that the same must be corroborated by other legal and competent evidence which, when taken in connection with such confession, shows his guilt of the offense of murder beyond a reasonable doubt. And in this connection I further charge you that such corroboration is not sufficient if it merely shows that the offense of murder of Zella Faulk was committed by some one, but it must of itself and independent of the defendant's confession show, first, that such confession is true, and, second, that it must of itself and independent of such confession tend to connect the defendant with the offense of the murder of Zella Faulk. And if you do not so find in this case it will be your duty to acquit the defendant." The giving of this charge at the request of appellant would cure any real or supposed error on the part of the court. This charge as given was more favorable than the law accorded appellant with reference to this question, therefore no error was committed in this matter.

The court at the request of appellant gave this further charge: "That if you find and believe from the evidence that at the time the defendant made the confession introduced in evidence to W. R. Parker he was laboring under such a defect of reason as to not understand the nature and quality of his act, then you will not consider the same for any purpose in this case." The following charge was also given at appellant's request: "I instruct you that the law requires that before a confession can be considered in evidence it must appear that the same was freely and voluntarily made by defendant, that he was properly warned and cautioned before making the same that any such statement would be used against him upon the trial of this case, by the person to whom such confession, if any, was made, and that he understood such warning

before he made such confession. Now unless you find these facts to be true you will not consider such confession for any purpose or if from the evidence before you you have a reasonable doubt as to either of such facts then it will be your duty to exclude such confession from your consideration."

It is also contended that the court should have given a charge more full in its language with reference to the question of manslaughter, and especially should he have charged the jury that if appellant's mind was enraged with reference to the conduct of the girl that night and the killing occurred while his mind was so enraged, they should consider this as a ground for manslaughter. The court gave a charge upon manslaughter. We are of opinion there was no error in refusing this charge, and in fact we are of opinion that manslaughter was not in the case. The facts do not show that his mind was in such condition as contended not only by the testimony but by his confession. There may be a case where a party might have the benefit of manslaughter where his betrothed has been guilty of such conduct as to enrage her lover, but this record does not show such a state of case, nor do the attendant facts and circumstances so show. He states that he made up his mind to kill her, secured an ax for that purpose, changed his mind, took her off to the woods for quite a distance and away from the city in the river bottom, and procured a bludgeon three and one-half or four feet long, struck her three blows, and these are shown by the testimony to have been fatal. He went away and returned in company with Clyde Tucker. Finding her breathing he took Tucker's knife with a blade three and one-half inches long and cut her throat from ear to ear. This does not, in our opinion, raise the issue of manslaughter under the facts.

An exception was reserved to the charge also on the ground that it did not charge the provisions of article 1147 as found in Mr. Branch's Ann. P. C., p. 1179. This reads as follows: "The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears." It would seem from this under the authorities that if the evidence shows that the weapon or means used by the slayer were without controversy a deadly one, and that he intended to kill, it would be error to charge the jury that the instrument or means by which the homicide was committed is to be taken into consideration in judging of the intent of the accused. This would be a presumption of law against the defendant, and wherever that is the case the charge should not ordinarily be given. See Branch's Ann. P. C., sec. 2099, for collation of authorities. This statute should be given in charge usually where there is an issue as to the deadly character of the weapon in committing the homicide, and where the intention does not evidently appear. If the weapon used is used in such manner as to show an evident intention to kill the deceased, and there is no evidence that such was not his in-

tention, it is not error to fail to charge on this statute. This seems to be borne out by the authorities. See Ford v. State, 64 Texas Crim. Rep., 14; Baker v. State, 81 S. W. Rep., 1216, and cases there cited.

The court properly overruled the application for a continuance. The only witness who was absent was Woolwine. By that witness, the bill states, he expected "to prove that he was present on the night of the killing and saw defendant immediately after the killing, and would testify that defendant was insane at said time." This is too general a statement. It sets out no fact, but only a general conclusion that the witness would so swear.

The bill of exceptions with reference to the motion to quash the venire served upon him is too indefinite for consideration. It does not show wherein the motion to quash was sustained in any way, and there was nothing offered to show that the motion should be sustained.

Bill No. 4 recites: "While the witness A. C. Donohoe was upon the stand and being examined as a witness on behalf of defendant, on said application, defendant's counsel propounded to witness the following question: 'I will ask you if in your opinion the people out there in that community (North Fort Worth) have not already prejudged this case—got their minds made up?'" The witness would have answered in the affirmative. In the absence of a motion for change of venue and in view of the meagerness of this bill we are unable to say how it could have had any bearing upon the question then under consideration before the trial court.

Another bill recites that while the witness McBride was testifying he was questioned by the county attorney as follows: "Q. This defendant, Rufus Coates, is the man you were talking to that night and the man you saw with this girl (Zella Faulk)? A. Yes, sir; that night he had had a fight and had a little skinned place on his eye, or he told me he had a fight that night. Mr. Cummings: I object to that. The court: Sustain the objection. Mr. Cummings: And what he told him, I move to exclude that evidence. Mr. Spoonts: Statement of the defendant, corroboration. The court: I will give you a bill, Mr. Cummings Mr. Cummings: We except. The ground I object to it on, it is injurious and prejudicial; not relating to the homicide in question; having no bearings or relation to it save to prejudice the defendant's case before the jury." These exceptions were overruled. Just what connection this had with the case is not manifested by this bill. When and where defendant may have had a fight, or stated he had a fight, is not shown by the bill of exceptions, or what connection it had with the killing of the girl. The bill is too indefinite for consideration.

Another bill recites that while the witness McBride was testifying defendant's counsel propounded to him the following question: "You didn't think that was her home when you took her up there? A. I didn't know. Q. You were taking a girl that was drunk and having spells around and hunting for Rufus Coates in the night-time, hunting for a man you didn't know? Mr. Spoonts: He didn't say she was drunk.

We object to that. The court: Sustain the objection. Mr. Cummings: Note our exception." What the object and purpose of offering this testimony was is not shown, or what connection it had with the case. The bill is too meager.

Another bill recites while John Connelly was on the stand one of counsel for the State asked him: "Now, after the defendant was arrested in this case and brought to Fort Worth, I will ask you to state to the jury whether or not you went in company with him and anyone else to the scene of the killing? A. Yes, sir; I did. Q. I will ask you to state whether or not he directed the way through the woods to the scene of the killing. Mr. Cummings: He was under arrest at that time. A. Yes, sir. Mr. Cummings: We object to any statement or act of the defendant while under arrest. The court: Objection overruled. Mr. Cummings: Note our exception. We object to any statement by the defendant at this time because he was under arrest and because the evidence does not show that at that time he was duly warned or cautioned as required by law, and further, that the statute requires that any statement or act of the defendant in the nature of a confession must be in writing, and before making the same the defendant must be properly cautioned as required by law. Mr. Parker: He showed where the place was, pointed it out, and it is a matter of corroboration. Whereupon the State withdrew the question." As this matter is presented we do not think it presents reversible error. The bill is very indefinite, and from the matter sought to be elicited it seems that the defendant went in company with witness to the scene of the killing, and it is stated he was under arrest. Just how this came about, or what induced it is not shown. We do not believe there is enough merit in this matter to require serious consideration in view of the fact that the matter was withdrawn from the jury.

Another bill recites that while Dr. McLean was on the stand he was asked by one of State's counsel if he had ever previously seen the defendant. Being answered in the affirmative, he was asked when and where he saw him, and he stated four or five days ago in jail. Objections were urged to this by appellant's counsel that he could not use any statement made by defendant while in jail as a basis for an opinion with reference to insanity, and counsel for the State then stated it was with reference to insanity and he was taken there to jail for that purpose, referring to witness. The court remarked: "Is he going to testify as to statements?" Counsel for the State said: "He asked the boy questions. The court: Sustain the objection." The assistant county attorney then asked: "Doctor, at that time did you talk to him and observe him and examine him with reference to his mental condition? Mr. Cummings: The objection goes to this also, your honor. The court: On the same grounds? Mr. Cummings: Yes, sir. The court: I overrule the objection. Mr. Cummings: We except. The witness answered: I talked to him about forty-five minutes." He was then asked by State's counsel: "Did you make any physical examination of him in any way?

A. Yes, sir. Q. From the observation that you there made . . .
Mr. Cummings: Our objection goes to all this without renewing it each
time. Counsel for State: I will ask you to state to the jury whether
or not in your opinion from your observation you had with him and the
examination you made of the defendant, whether or not in your opinion
he is a degenerate? Same objection, same ruling and exception. A. I
do not consider him a degenerate." Then came a hypothetical question
to the doctor by the State, and the answer was: "This particular man
that I talked to I would regard him as having been sane, I mean sane
at the time. . . . Mr. Cummings: Same objection, same ruling and
exception. Answer of witness continued: There was no evidence in
anything he told me that would indicate he was insane prior to the kill-
ing or subsequent. Mr. Cummings: For the purpose of determining
the admissibility of this: you are basing opinion altogether on what you
saw and what he told you in jail? A. On his talk and his chain of
thought and the way he related circumstances. Q. And that occurred
there while he was in jail under arrest? A. Yes, sir; that is the only
time I have ever seen him. State's counsel: In this conversation he
didn't detail to you in any way anything about this crime? A. No, sir;
I didn't ask him about it. The court: I overrule the objection. Mr.
Cummings: We except." This is the entire bill, and we are of opinion
error is not shown. The rule is announced in Mr. Branch's Ann. P. C.,
p. 18, as follows: "Proof of statements and acts made and done while
defendant is in confinement or custody, and which is not of a criminative
character in connection with the case on trial is admissible on the issue
of insanity, whether the defendant be warned or not." Burt case, 38
Texas Crim. Rep., 397. Mr. Branch collates quite a number of au-
thorities.

There are two bills reserved to argument of counsel. Some of the
objectionable part of the statements were withdrawn by the court and
the jury instructed to disregard them. The others remained before the
jury. We deem it unnecessary to discuss these matters, believing there
is no sufficient reason shown why the judgment should be reversed. They
are brought fairly within the rule laid down in Thomas v. State, 33 Texas
Crim. Rep., 607. See Branch's Ann. P. C., p. 209, for collation of cases.

We have not deemed it necessary to go into a detailed statement of the
evidence. The record is very full in detail and rather voluminous. It
may be seriously questioned whether or not the details of a horrible
crime as this should be perpetrated in our jurisprudence. The trial
court and jury, we think, were justified in holding the testimony suf-
ficient as viewed from the light of this record. We have stated enough
to show that the killing was one of unusual note in deliberation and
atrocity.

The judgment will be affirmed.

*Affirmed.*

PRENDERGAST, JUDGE, absent.

ON REHEARING.

May 22, 1918.

DAVIDSON, PRESIDING JUDGE.—At a former day of this term the judgment herein was affirmed. Appellant has filed a motion for rehearing complaining of the opinion in several respects. First he says the court was in error in not reversing the judgment because of the failure to obtain a change of venue. The motion to change venue was not considered, as shown by the original opinion, because the statement of facts was not approved by the judge nor signed by counsel for appellant, and further, because the statement of facts in the purported bill of exceptions was in question and answer form. Appellant refers to the fact that attached to the statement of facts and at the first portion thereof is a statement of facts introduced upon the motion for change of venue, and all of the facts as shown by said statement of facts, and that said statement of facts was duly signed by counsel for the State and counsel for appellant, and approved by the court on September 29, 1917. There is some testimony with reference to change of venue in the statement of facts. The statement of facts at its termination is signed as stated by counsel and approved by the judge. The evidence in the statement of facts with relation to the change of venue was not reserved in a bill of exceptions as required by the statute, and, therefore, is not noticed. The statute is imperative and has always been so held that in order to have a motion for change of venue considered, a bill of exceptions must be reserved and the evidence set out in the bill of exceptions. It is not sufficient to set out testimony in a statement of facts, but the evidence must be reserved in a bill of exceptions. This is demanded by the statute, and has always been so held. There is nothing stated to show that appellant was placed in such condition that he could not obtain a statement of facts in a bill of exceptions, or a proper bill containing the evidence. Therefore, there is no question that the bill of exceptions could have contained a statement of the facts approved by the judge. What purports to be a bill is not approved by the judge, and it is not sufficient to include the evidence in a general statement of facts. There is no sufficient reason why the court should reconsider this case upon that ground or grant a rehearing.

Complaint also is made that the court was in error in not sustaining appellant's proposition that the charge on manslaughter was not sufficient. We hardly deem it necessary to review this matter, but refer to the original opinion for a statement of the condition of the record as to the facts in this connection. The case of Lane v. State, 29 Texas Crim. App., 310, cited by appellant, does not seem to be in point, and it is, therefore, deemed unnecessary to review that case in connection with this record.

We deem it unnecessary to review or discuss other questions. We are of opinion that the judgment affirming the case was correct.

The motion for rehearing will be overruled.                    *Overruled.*